[Civ. No. 3831. Third Appellate District.—December 4, 1929.]

BARTHOL MORANDA et al., Appellants, v. SOPHIA MAPES et al., Respondents.

A. H. Carpenter for Appellants.

Woodward, Briggs & Blewett, M. G. Woodward and Von Detten, Henry & Goodrum for Respondents.

JAMISON, J., *pro tem.*—This action was brought by appellants against respondents, as set forth in the first count of their complaint, for negligently, intentionally and maliciously setting out fire on the lands of defendants within twenty yards of plaintiffs' lands, and on plaintiffs' land and for negligently permitting same to be communicated· to, and to burn over the lands of plaintiffs, thereby destroying fruit, nut and shade trees, fences, wood, etc., to plaintiffs' damage. And in the second count of said complaint appellants further allege that by reason of the destruction wrought by said fire in burning the said fences and driftwood and drift, the levees protecting the land of plaintiffs broke and washed out, and as a result thereof plaintiffs' said land was flooded and trees and vines thereon were destroyed, to plaintiffs' damage.

The action was tried by the court without a jury, and at the close of plaintiffs' evidence the court granted a nonsuit as to defendants Sophia Mapes, Sophia Bollinger and Nanette Bollinger, and at the close of defendants' evidence,

and upon submission of the case, the court rendered judgment in favor of defendants, and from this judgment plaintiffs have appealed.

It appears from the evidence that in the fall of 1925 respondent Clarence Wells Mapes was the owner of land lying near that owned by appellants, and that on the twenty-fifth day of October, or the fifteenth day of November, 1925, respondent Carroll Mapes, who was acting for his brother Clarence Mapes, went upon his brother's said land and burned off some twenty acres of stubble. He completed this burning about 4 o'clock P. M., and then went to a shallow slough, same being a fork or prong of the slough known as the Mormon Slough, and started a fire on an island that lies between the shallow slough and the deep water of the said Mormon Slough. Carroll Mapes testified that the purpose of starting the fire on the island was to burn off the drift and driftwood that had accumulated thereon and obstructed the flow of water in said slough; that the accumulation of drift and driftwood on said island obstructed the flow of the waters of said slough, and thereby endangered the levees that protected his brother's land. This same witness further testified that a few minutes after he had started the fire on the island, appellant Barthol Moranda came from his home and demanded of said Mapes why he had started the fire; that some conversation took place between them, and that said Moranda then said, "I will fix you," and started for his house. Witness, then fearing that said Moranda was going after a gun, retreated to the other end of the island some four hundred feet distant; that he remained there until 6 o'clock P. M. watching the fire and then went home; that when he left the fire it was practically out; that it was just smoldering; that he returned about 9 o'clock P. M. that same evening to look after the fire, and found that it was no longer burning. Appellant Barthol Moranda denied that he had threatened the said Carroll Mapes in any way. He further testified that in spite of his efforts to prevent it, the fire crossed the slough and burned over a strip of his land a thousand feet long and sixty feet wide and destroyed a large number of his nut and fruit-trees and grape-vines. He also claimed it burned a lot of driftwood and a large oak tree on the

island. It appears that the boundary line between appellants' land and that of respondent Clarence Wells Mapes is in dispute, and was in dispute at the time of the fire, and since then each of them was claiming this island. This dispute finally ended in a lawsuit in which judgment went for Clarence Wells Mapes, and from said judgment the said Moranda and wife appealed, and this appeal is still pending. Respondent Clarence Wells Mapes testified that on several occasions after the fires he held consultations with appellants, and that one of these was with their attorney, in which the boundary dispute was discussed, but that at none of these times was any mention made that appellants had suffered any damage from said fires. Respondents Clarence Wells Mapes and Carroll Mapes testified that the fires never crossed over upon appellants' land, or any part thereof, nor did said fires burn or injure any of appellants' nut or fruit trees or grape-vines, or other property, or do any injury to any property of appellants, and this testimony was corroborated by the testimony of other witnesses. Respondents further produced testimony to the effect that the burning of the drift, driftwood and riff-raff on the island did not cause appellants' levees to break or wash out, or cause appellants' fruit-trees or vines to be damaged by flooding.

The trial court found in substance that appellants did not own the said island, and had never owned it; that said fires were not negligently set, nor did they burn over the lands of appellants; that said fires did not burn, damage or destroy the property, or any part thereof, set forth in appellants' complaint, or any other property belonging to appellants; that the levees of appellants were not broken or washed out as a result of said fires, or of any act of respondents, or of either of them, nor were the fruit-trees or vines of appellants flooded or damaged or destroyed because of said fires, or by any acts of respondents, or either of them. Appellants claim that the finding of the court to the effect that they did not own the island is not supported by the evidence. In support of their claim that they owned the island appellants introduced in evidence a deed which conveyed to them a certain tract of land described as "all of that portion of the east half of the southeast quarter of section 32 and the west half of the southwest quarter of

section 33 in township 2 North of Range 8 E., M. D. M., containing 15.25 acres and lying southeast of the southeast bank of Mormon Slough.'' Appellant Allie Moranda was on the witness-stand when this deed was offered in evidence, and to the following questions she gave the following answers: ''Q. This (referring to the above description) is the description of the property marked on the board? A. Yes. Q. And that is the property on which the fire was set? A. Yes. Q. And where the trees were burned? A. Yes.'' Maps were used in questioning the witnesses, but none appear in the transcript. A careful examination of the evidence, as same appears in the transcript, fails to reveal any other evidence tending to show that the island is included in the above description. ██ However, admitting that the finding of the court that the island was not the property of appellants is not supported by the evidence, yet if, as a matter of fact, no damage was done to the property of appellants by the setting out of said fires, there can be no recovery in this action. Upon the question of whether or not the fires set out by respondent Carroll Mapes damaged the property of appellants, there is a decided and irreconcilable conflict. ██ A judgment cannot be reversed because the evidence is conflicting. On the contrary, the rule is established by a host of decisions that an appellate court will not disturb a verdict of the jury or findings of the court where there is substantial conflict of evidence on material points and where there is some evidence to support the verdict or findings. (2 Cal. Jur. 921, and authorities cited.) ██ There is ample evidence to support the finding of the court that no damage whatever was done to any property of appellants by said fires, or either of them.

The judgment is affirmed.

Finch, P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 3, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 30, 1930.

All the Justices present concurred.